Psinakis *v.* Psinakis, Appellant.

Argued November 9, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Frank P. Barnhart,* for appellant.

*Ray Patton Smith,* for appellee.

OPINION BY ERVIN, J., January 14, 1955:

The principal question involved in this appeal is the competency of the plaintiff (appellee here) to testify that his claim has not been paid contrary to the provisions of Sec. 5, Clause (e), of the Act of May 23, 1887, P. L. 158, 28 P.S. 322, commonly known as the "dead man's rule."

This is a suit in assumpsit in which plaintiff sued the administratrix of the estate of his deceased brother to recover the sum of $3,307.50 which plaintiff paid for certain stock ordered by the deceased brother before he departed for Europe.

Plaintiff offered into evidence the pleadings wherein defendant admitted that the deceased brother had received the stock, and, after his return from Europe, had from time to time orally promised to repay unto the plaintiff the loan of $3,307.50. Plaintiff's check to the stockbroker in the sum of $3,307.50 was admitted without objection. It was also admitted by defendant that the decedent died December 19, 1949, but in new matter she averred payment by decedent in his lifetime. The plaintiff was then permitted to testify, over the objection of the defendant, as follows: "Q. Mr. Psinakis, have you been paid for this check? A. No. Q. Any part of it? A. No part of it." The court in its charge said: ". . . but nothing seals the lips of a man from testifying that he has not been paid.".

In her defense the administratrix proved by a bank officer that plaintiff had received the proceeds of the three following checks:

Aug. 4, 1948   $750.00

May 5, 1949   1,000.00   Notation: "For Part Payment on Loan"

July 23, 1949   200.00   Notation: "For loan"

The jury rendered a verdict for the plaintiff in the sum of $2,107.50. It is clear that they gave defendant

credit for the $1,000.00 and $200.00 checks but refused to give her credit for the $750.00 check.

We are convinced that it was error to admit plaintiff's testimony as to nonpayment and to charge the jury that he could testify as to same. Without this testimony the jury might have allowed defendant the further credit of $750.00.

True it is that the daughter of plaintiff testified to hearing a conversation between her father and uncle, which she said took place five or six months prior to the uncle's death, wherein the uncle is alleged to have admitted the indebtedness and to have promised to pay it in the future.

We cannot tell whether the jury would have been persuaded as it was by the daughter's testimony alone or whether the father's testimony tipped the scales. We are therefore obliged to grant a new trial.

Since the passage of the Act of 1887 the courts have frequently been confronted with the problem of what facts existing or happening after the death of the opposite party may be testified to by the survivor. The rule has been stated thus: "Where a fact is sought to be proved which, though existing after death, *necessarily* relates to a fact occurring before death, the witness may not testify as to it. . . .

"Where the fact after death merely *incidentally* proves a prior existing fact, the witness . . . is competent to testify as to it." (Emphasis added) Brown, Pa. Evid. p. 251.

This rule, like many similar ones, is not difficult to state but extremely difficult to apply. President Judge RICE, in *Keating v. Nolan,* 51 Pa. Superior Ct. 320, endeavored to distinguish the cases in accordance with this rule. See also 2 Henry Pa. Evid. 4th Ed., Sec. 776; Brown, Pa. Evid. p. 251.

Where the sole issue is payment, the survivor, in our opinion, is incompetent to testify after the death of the opposite party that he has not been paid. *Lahey v. Heenan,* 81 Pa. 185, 189; *Armitage, Exr., v. Ulrich,* 159 Pa. Superior Ct. 202, 203, 204, 48 A. 2d 135; *Engemann v. Colonial Trust Co.,* 378 Pa. 92, 99, 100, 105 A. 2d 347.

To permit the survivor to do directly that which he may not do indirectly would in effect destroy the very purpose for which the Act of 1887 was intended. Under the proposed Uniform Rules of Evidence drafted by the National Conference of Commissioners on Uniform State Laws and by it approved at the annual conference held August 22, 1953 and in turn approved by the American Bar Association at a meeting held August 28, 1953 and recently endorsed by the American Law Institute, the "dead man's rule" is omitted. It is our duty, however, to enforce the rule as long as it remains the law in Pennsylvania.

Some other questions were argued but in view of our disposition of the case on the principal question, we deem it unnecessary to give further consideration to them at this time.

Judgment is reversed with a venire.